UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| COURTNEY GREEN,<br><br>    Petitioner,<br>v.<br><br>GARY WRIGHT & SCOTT SEMPLE,<br><br>    Respondents. | Civil Action No.<br>3:19-cv-52 (CSH)<br><br>SEPTEMBER 10, 2019 |

## RULING ON PETITION FOR WRIT OF HABEAS CORPUS

**Haight, Senior District Judge**:

*Pro se* petitioner Courtney Green, a prisoner currently confined at the Osborn Correctional Institution ("Osborn") in Somers, Connecticut, has filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the Commissioner of Correction's policy change that reduced the amount of risk reduction earned credits ("RRECs") that he could earn. Doc. 1 ("Petition"). For the reasons that follow, the Court construes the writ as alleging a violation of the *ex post facto* clause. *Id.* at 9. By this Ruling, the Court resolves the Petitioner's request for habeas relief.

### I. FACTS AND PROCEDURAL HISTORY

The Connecticut Appellate Court summarized the underlying facts of the case as follows:

> On May 11, 2016, the petitioner, representing himself, filed a petition for a writ of habeas corpus.
>
> Therein, the petitioner alleged that on or about August 28, 2011, the respondent, the Commissioner of Correction (commissioner), implemented the Risk Reduction Earned Credit (RREC) program pursuant to his authority under General Statutes § 18-98e. He stated

> that the "RREC allowed . . . [him] to be awarded time at the discretion of the commissioner . . . at the rate of five days per month for participation in programs or activities [and] good conduct and obedience to departmental rules . . . ." Although the petitioner admitted in his petition that the risk reduction credits were awarded at the commissioner's discretion, he also alleged that he signed an "agreement with department staff" that entitles him to receive five risk reduction credits per month.
>
> The petitioner further alleged that on February 1, 2016, the commissioner sent a memo to inmates informing them that he was changing the way he awarded risk reduction credits pursuant to a new policy outlined in Department of Correction, Administrative Directive 4.2A. The directive provided that, thereafter, the amount of credits an inmate would be eligible to receive each month would be based on the inmate's risk classification—a level four inmate could earn up to three days of credit per month, a level two or three inmate could earn up to four days, and a level one inmate could earn up to five days. Moreover, a level four inmate could apply to have reinstated the additional two credits per month that he was earning previously.
>
> The petitioner further alleged that he continues to be in compliance with the aforementioned "agreement" and, despite the change in policy, should therefore "be grandfathered [in] to receive five days RREC per month, pursuant to . . . § 18-98e." He thus requested the habeas court's intervention and that it "reinstate the RREC of five days per month that [he] signed a contract for . . . ."
>
> On May 19, 2016, the habeas court, Oliver, J., disposed of the petition sua sponte pursuant to Practice Book § 23-24 (a) (1)3 because the court lacked subject matter jurisdiction over it, citing *Petaway v. Commissioner of Correction*, 160 Conn. App. 727, 125 A.3d 1053 (2015), *cert. dismissed*, 324 Conn. 912, 153 A.3d 1288 (2017). The court did not hold a hearing prior to reaching this determination.

*Green v. Comm'r of Correction*, 194 A.3d 857, 859–60 (Conn. App. Ct. 2018) (footnotes omitted).

On appeal, Petitioner claimed that the habeas court "improperly disposed of his petition because it (1) incorrectly concluded that it lacked jurisdiction and (2) failed to conduct a hearing on

2

that issue prior to disposing of the petition." *Id.* at 859. The Connecticut Appellate Court affirmed the habeas court's decision, agreeing that he was not entitled to a hearing and that the habeas court did not have jurisdiction over his petition. *Id.* at 862. In support of its ruling on the latter point, the Appellate Court had found that Petitioner did not show the required interest sufficient to give rise to habeas relief because he does not have a constitutionally protected liberty interest in RRECs. *Id.* at 863, 866. It also dismissed Petitioner's argument that he was contractually entitled to the five days' rate of RRECs because there was no basis to conclude that there was a binding contract nor that the commissioner had the statutory authority to strip away his discretion in administrating the RREC program. *Id.* at 866. The Connecticut Supreme Court denied his petition for certification. *Green v. Comm'r of Correction*, 195 A.3d 383 (Conn. 2018).

The action is now before this Court. For the reasons that follow, the Court construes the Petition as alleging a violation of the *ex post facto* clause. Additionally, Petitioner asserts that the contract entitled him to the five days' rate of RRECs. Doc. 1 at 9; Doc. 1-1 at 3. Petitioner seeks to be released from custody or to be allowed to earn five days' worth of RRECs again. Doc. 1-1 at 3.

## II.  STANDARD OF REVIEW

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(a), "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("Section 2254(a) permits a federal court to entertain only those applications alleging that a person is in state custody in violation of the Constitution or laws

3

or treaties of the United States." (internal quotation marks omitted)).  Because federal habeas relief may only be obtained for a violation of federal law, it "does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (citation omitted).

Moreover, as the Second Circuit stated in *Lewis v. Connecticut Commissioner of Correction*, 790 F.3d 109 (2d Cir. 2015):

> [F]ederal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that "is independent of the federal question and adequate to support the judgment." *Cone v. Bell*, 556 U.S. 449, 465 (2009) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)).

790 F.3d at 117.

In determining whether a state conviction violates federal law, Section 2254(d) "imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citations and internal quotations omitted).  This Court cannot grant a petition for a writ of habeas corpus filed by a person in state custody with regard to any claim that was rejected on the merits by the state court unless the adjudication of the claim in state court either:

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

4

In sum, "in order to satisfy § 2254(d)'s substantive predicates and merit federal review" of Petitioner's claims for habeas relief, he must establish either that the state court's decision: "(1) contravened clearly established federal law, as determined by the Supreme Court, or (2) was based on an unreasonable determination of the facts." *Lewis*, 790 F.3d at 121. This standard for obtaining federal habeas relief is "difficult to meet," *Metrish v. Lancaster*, 569 U.S. 351, 357–58 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)); it is also "highly deferential" to state court rulings, "stop[ping] short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings," *Harrington,* 562 U.S. at 102, 105.

"Clearly established federal law, as determined by the Supreme Court," refers to the "holdings, as opposed to the *dicta*, of [the Court's] decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *see also Howes v. Fields*, 565 U.S. 499, 505 (2012); *Carey v. Musladin*, 549 U.S. 70, 74 (2006); *Kennaugh v. Miller*, 289 F.3d 36, 42 (2d Cir. 2002). "[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court.'" *Parker v. Matthews*, 567 U.S. 37, 48 (2012) (quoting 28 U.S.C. § 2254(d)(1)). A decision is "contrary to" clearly established federal law when it applies a rule different from that set forth by the Supreme Court or if it decides a case differently than the Supreme Court on essentially the same facts. *Bell v. Cone*, 535 U.S. 685, 694 (2002).

A state court unreasonably applies Supreme Court law when it has correctly identified the law but unreasonably applies that law to the facts of the case, or refuses to extend a legal principle clearly established by the Supreme Court to circumstances intended to be encompassed by the principle. *See Davis v. Grant*, 532 F.3d 132, 140 (2d Cir. 2008). Moreover, "an unreasonable application of federal law is different from an incorrect application of federal law." *Eze v.*

5

*Senkowski*, 321 F.3d 110, 124-25 (2d Cir. 2003) (quoting *Williams*, 529 U.S. at 410). Specifically, the state court's application of clearly established federal law must be "objectively unreasonable," a substantially higher standard. *Id.*; *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). Thus, a habeas petitioner must show that the challenged court ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." *Harrington*, 562 U.S. at 103; *accord Metrish*, 569 U.S. at 358; *see also Williams*, 529 U.S. at 389 ("[S]tate-court judgments must be upheld unless, after the closest examination of the state-court judgment, a federal court is firmly convinced that a federal constitutional right has been violated").

When reviewing a habeas petition, the Court presumes that the factual determinations of the state court are correct. *See* 28 U.S.C. § 2254(e)(1); *Rice v. Collins*, 546 U.S. 333, 338-39 (2006) ("State-court factual findings . . . are presumed correct."). The petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Also, the Court's "review under section 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen*, 563 U.S. at 181.

In sum, when reviewing an application for a writ of habeas corpus by a state prisoner, a district court must ask three questions to determine whether habeas relief should be granted: "(1) Was the principle of the Supreme Court case law relied upon by the petitioner 'clearly established' when the state court ruled? (2) If so, was the state court's decision 'contrary to' that established Supreme Court precedent? (3) If not, did the state court decision constitute an 'unreasonable application' of that principle?" *Williams v. Artuz*, 237 F.3d 147, 152 (2d Cir. 2000), *cert. denied*, 534

U.S. 924 (2001). "When applying these standards, the federal court should review the 'last reasoned decision' by a state court." *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004).

### III.  ANALYSIS

**A.  Whether Petitioner Exhausted His Federal Constitutional Claim in State Court**

To determine whether the claim regarding federal constitutional law in Green's present habeas Petition was exhausted, the Court must apply the general standard set forth in *Baldwin v. Reese*, 541 U.S. 27 (2004).  In that opinion, Justice Breyer wrote:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'" To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim.

*Baldwin*, 541 U.S. at 29 (citations and internal quotation marks omitted).

A prerequisite to federal habeas corpus relief under 28 U.S.C. § 2254 is the exhaustion of available state court remedies. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).  The Second Circuit requires the district court to conduct a two-part inquiry to determine exhaustion. *See Galdamez v. Keane*, 394 F.3d 68, 73 (2d Cir. 2005).  "First, a federal court must examine whether applicable state court remedies remain available to the petitioner." *Id.* In this regard, the petitioner "need not have invoked every possible avenue of state court review." *Id.*  Rather, "'state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.'" *Id.* (quoting *O'Sullivan*, 526 U.S. at 845).  A "complete round" requires the petitioner to present his claim to the highest court of

the state and apprise that court of "both the factual and the legal premises of the federal claims ultimately asserted in the habeas petition." *Galdamez*, 394 F.3d at 73 (citations omitted).

"Second, . . . the federal court must assess whether the petitioner 'properly exhausted those [state] remedies, *i.e.*, whether [petitioner] has fairly presented his [or her] claims to the state courts,' such that the state court had a fair opportunity to act." *Id.* (citing *O'Sullivan*, 526 U.S. at 845). This inquiry "embodies the concept of procedural default." *Galdamez*, 394 F.3d at 73. The procedural default doctrine "ensur[es] that state courts receive a legitimate opportunity to pass on a petitioner's federal claims and that federal courts respect the state courts' ability to correct their own mistakes." *Id.* Thus, to properly exhaust a federal habeas claim in state court, the petitioner "must put state courts on notice that they are to decide *federal constitutional claims*." *Petrucelli v. Serrano*, 735 F.2d 684, 687 (2d Cir. 1984) (emphasis added). The exhaustion requirement "expresses respect for our dual judicial system and concern for harmonious relations between the two adjudicatory institutions"—state and federal. *Id.* at 687 (citation and internal quotation marks omitted).

> For purposes of exhaustion, adequate notice to the state court includes:
>
> > (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

*Id.* at 688 (quoting *Daye v. Attorney Gen. of State of N.Y.*, 696 F.2d 186, 194 (2d Cir. 1982)). Requiring such notice is not unreasonably burdensome on state prisoners. *See Baldwin*, 541 U.S. at 32 ("A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the

federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'").

Failure to exhaust state court remedies may be excused only if "there is no opportunity to obtain redress in state court or if the corrective process is so clearly deficient to render futile any effort to obtain relief." *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981) (*per curiam*); *see also* 28 U.S.C. § 2254(b)(1)(B). Furthermore, the petitioner may not simply wait until appellate remedies are no longer available and then argue that the claim is exhausted. *See Galdamez*, 394 F.3d at 72–74.

With respect to the first requirement, it appears that Petitioner has done a "complete round" in the Connecticut state court system. He began with the state habeas court and went through the Appellate Court of Connecticut. *See Green v. Comm'r of Correction*, 194 A.3d 857, 859 (Conn. App. Ct. 2018). The Supreme Court of Connecticut then denied his petition for certification to appeal the Appellate Court's decision. *See Green v. Comm'r of Correction*, 195 A.3d 393 (2018).

As to the second requirement of whether the Petitioner has sufficiently presented enough to put the state courts on notice of his federal constitutional claims, that is a more difficult question. He potentially raises one constitutional argument in the current Petition, alleging that the reducing the rate at which he may earn RRECs alters or lengthens his sentence and thereby violates the *ex post facto* clause.[1] Petition at 9. However, Petitioner has been seemingly inconsistent or contradictory about raising this argument throughout the state court habeas process.

---

[1] U.S. Const. art. I, § 10 ("No state shall . . . pass any bill of attainder, *ex post facto law*, or law impairing the obligation of contracts, or grant any title of nobility.") (emphasis added). The clause prohibits the retroactive application of a law that "changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed." *Calder v. Bull*, 3 U.S. 386, 390 (1798).

The habeas court and Appellate Court's discussions about his constitutional claims center around whether the Petitioner had raised a constitutionally protected liberty interest in the RRECs. *Green*, 194 A.3d at 863. This was important because the habeas court only had subject matter jurisdiction if a petitioner alleged "that he is illegally confined or has been deprived of his liberty." *Id.* (quoting *Joyce v. Comm'r of Correction*, 19 A.3d 204, 207 (Conn. App. Ct. 2011) (internal quotation marks omitted). Not much is explicitly said about the *ex post facto* clause.

Nonetheless, the Appellate Court's opinion appears to show that the Petitioner raised this type of constitutional claim before the court:

> The petitioner alleged that he is being deprived of risk reduction credits to which he is entitled, and *thereby is being forced to serve a sentence of longer duration*. In order to determine whether the court had jurisdiction, therefore, we must decide whether the petitioner has a constitutionally protected liberty interest in the risk reduction credits.

*Green*, 194 A.3d at 863 (emphasis added). The Appellate Court ultimately affirms the habeas court's disposal of his habeas petition for lack of subject matter jurisdiction. *Id.* at 866. In any case, it does not name the *ex post facto* clause here, but the reference to a longer sentence clearly invokes the clause's principle and shows that the Appellate Court was aware of this argument by Plaintiff. As such, it appears that Petitioner has put at least the Appellate Court on notice of his federal constitutional claim.[2] This is only a tentative finding as Petitioner has not provided a copy of the brief that was presented to the Appellate Court, and so this Court cannot definitively determine if Petitioner clearly raised this argument.

---

[2] In the Appellate Court Petitioner also raised the claim that his due process rights were violated when the habeas court failed to holding a hearing on whether it had jurisdiction. *See Green*, 194 A.3d at 860. He does not raise this claim in the instant Petition.

On the other hand, in the petition for certification to appeal the Appellate Court's decision to the Connecticut Supreme Court, Petitioner seems to reject the idea that he is making an *ex post facto* claim. None of the four questions presented for review concern this claim, instead addressing issues related to the habeas court's jurisdiction or breach of contract arguments. Doc. 1-3 at 1–2. In addition, the petition attempted to distinguish the case from *Petaway v. Comm'r of Correction*, 125 A.3d 1053 (Conn. App. Ct. 2015)—upon which the habeas court relied to conclude it lacked jurisdiction—by arguing that *Petaway* "concerned an *ex post facto* claim and parole eligibility," but that Petitioner's case "concerns a breach of contract and promissory estoppel claims related to RREC that reduced the date on which the petitioner's sentence would end, and whether the respondent, by failing to comply with the alleged contract of promise is unlawfully extending the petitioner's confinement." *Id.* at 3–4. Petitioner seems to be asserting here to the Connecticut Supreme Court that *Petaway* does not apply because *Petaway* contains an *ex post facto* claim whereas Petitioner's case does not. This is seemingly contradictory, though, as *ex post facto* claims concern unlawfully inflicting a greater punishment, which appears to be in the same category of constitutional violations of, in Petitioner's words, "unlawfully extending . . . confinement." *Id.*; *see supra* note 1.

There are no other markers to indicate that Petitioner asserted a constitutional claim to the Connecticut Supreme Court. He did not invoke "pertinent federal cases employing constitutional analysis"; nor does he present "state cases employing constitutional analysis in like fact situations." *Carvajal v. Artus*, 633 F.3d 95, 107 (2d Cir. 2011) (citing *Daye*, 696 F.2d at 194). Again, he requested a review of the Appellate Court's findings on only jurisdiction and breach of contract questions. The former involves a constitutional element in that the Appellate Court determined that Petitioner needed to have alleged a constitutional liberty interest in the RRECs for the habeas court

11

to exercise jurisdiction, but the Petitioner denied that he was required to allege such an interest because he was pursuing a breach of contract claim. Doc. 1-3 at 5–6 ("The Court required the [P]etitioner to allege a constitutional or statutorily protect[ed] interest, even though the elements of an action for breach of contract include no such requirement."). Thus, it appears that Petitioner denies that he even had to make any constitutionally related claims in his Petition.

Because of the contradictory and unclear way Petitioner presented his *ex post facto* claim to the Connecticut Supreme Court and his dismissal of the need to raise any other constitutional claims, this Court finds that Petitioner failed to adequately apprise the Connecticut Supreme Court that his claim addressed a federal constitutional claim. *See, e.g.*, Ponnapula v. Spitzer, 297 F.3d 172, 181 (2d Cir. 2002) ("Although Ponnapula fashions this claim as a challenge under [*In re*] Winship, [397 U.S. 358 (1970),] we conclude that it provides no basis for federal habeas relief because it rests solely on a question of state law." (citations omitted)). This Court will therefore deny habeas relief due to Petitioner's failure to exhaust state court remedies by failing to adequately place the Connecticut Supreme Court on fair notice of his constitutional claim in his request for certification.

**B.  Petitioner's Breach of Contract Claim**

Alternatively, because the issue of exhaustion may arguably be debated by reasonable minds, the Court now reviews Petitioner's claims for habeas relief, beginning with his breach of contract claim. He argues that he had entered an agreement with the Department of Correction to be awarded RRECs at a rate of five days per month in exchange for "participation in programs or activities, good conduct and obedience to departmental rules, unit and/or program rules." Doc. 1-1 ¶ 4. However, the policy changed in 2016 as per Administrative Directive 4.2A, so that Petitioner could only receive RRECs at a rate of three days per month. *Id.* ¶¶ 6–7. He alleges that he "didn't agree to this"

and that the Department should be made to adhere to the original "contract" it had made with Petitioner. *Id.* ¶¶ 8, 10.

As stated in *supra* Section II, habeas review under 28 U.S.C. § 2254(a) is limited. *See Cullen*, 563 U.S. at 181 ("Section 2254(a) permits a federal court to entertain only those applications alleging that a person is in state custody in violation of the Constitution or laws or treaties of the United States." (internal quotation marks omitted)). Because federal habeas relief may only be obtained for a violation of federal law, it "does not lie for errors of state law." *Estelle*, 502 U.S. at 67 (citation omitted).

Breach of contract is not a federal or constitutional claim. It is a state common law claim for which this Court does not have jurisdiction to review under 28 U.S.C. § 2254(a). As such, the Court must refrain from examining Petitioner's breach of contract claims.

**C.     Petitioner's *Ex Post Facto* Claim**

Assuming that Petitioner does in fact raise a constitutional claim as a claim for habeas relief—namely, an *ex post facto* violation—the Court finds that it is without merit. An *ex post facto* violation may occur after incarceration where retroactive application of a statute increases the punishment attached to conviction. *See California Dept. of Corr. v. Morales*, 514 U.S. 499, 509. This could include legislative changes that affect when a prisoner may be considered eligible for parole, *e.g.*, *Greenfield v. Scafati*, 277 F. Supp. 644 (D. Mass. 1967), but the *ex post facto* clause is not so expansive as to forbid "any legislative change that has any conceivable risk of affecting a prisoner's punishment," *Morales*, 514 U.S. at 508.

The Supreme Court of Connecticut decided relatively recently in *Breton v. Comm'r of Corr.*, 196 A.3d 789 (Conn. 2018), that retroactive application of a 2013 amendment to Conn. Gen. Stat.

13

§ 54-125a violated the *ex post facto* clause for a small population of inmates who committed their crimes before the § 54-125a amendment was enacted because it prohibited the application of RRECs to advance the parole eligibility date. *Id.* at 803. It is worth taking a closer look at the reasoning in *Breton* here as it concerns RRECs and significantly impacts the common law assumption that inmates did not have a constitutional interest in RRECs not yet earned due to their discretionary nature and thus could be revoked. *See Abed v. Comm'r of Corr.*, 682 A.2d 558 (Conn. App. Ct. 2002); *Beasley v. Comm'r of Corr.*, 718 A.2d 487 (1998). Petitioner's *ex post facto* claim here also concerns a change in prison policy affecting the rate at which he could earn future RRECs.

The circumstances in *Breton* do not apply to Petitioner's case, however. In *Breton*, the inmate had committed the offense in 2011, a few months after the Connecticut legislature codified Conn. Gen. Stat. § 18-98e that allowed certain inmates to earn risk reduction credits toward sentence reduction and parole eligibility. *See Breton*, 196 A.3d at 792. "Accordingly, when the petitioner committed the offenses for which he is imprisoned, earned risk reduction credits was to be applied by the [Commissioner of Correction] both to reduce the length of a violent offender's sentence and to advance his or her initial parole eligibility date." *Id.* at 792–93. The amendment that took away the application of RREC to parole eligibility occurred in 2013. *Id.* at 793. The *Breton* court determined that the 2013 amendment created a sufficient risk that the petitioner would be incarcerated longer than he would have been under the original statute that was in place at the time of the commission of his offenses, thus creating an *ex post facto* violation. *Id.* at 797–98.

In contrast, Petitioner committed the crime for which he was imprisoned in 2008 *before* Conn. Gen. Stat. § 54-125a was enacted in 2011 and certainly before the change in Administrative Directive 4.2A. It remains the law, even after *Breton*, that the *ex post facto* clause is not violated to

take away a benefit where an inmate committed his offense before the benefit was granted. *See Petaway*, 125 A.3d at 1055 ("[F]or a law to violate the prohibition, it must feature some change from the terms of a law in existence at the time of the criminal act."). Even though RRECs may affect when Petitioner is eligible for parole consideration, there is no *ex post facto* violation because at the time he committed the offense for which he was imprisoned, the law did not confer upon him the benefits of earning RRECs in the first place. In other words, the change in policy had no effect on lengthening the punishment he faced when he committed his offense in 2008 because the original policy did not exist at that time. Accordingly, no constitutional violation on the basis of the *ex post facto* clause exists here.[3]

**D.  Petitioner's Motion for Default**

Petitioner also moves for default entry under Fed. R. Civ. P. 55(a). Doc. 5. Default judgment operates by the plaintiff first moving for entry of default and then moving for default judgment under Rule 55(b). "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a); *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005). On

---

[3] This Court arrived at a similar conclusion after analyzing the applicability of *Breton* in the context of a separate lawsuit brought by the Petitioner pursuant to 42 U.S.C. § 1983, in which the Petitioner claimed that he was denied equal protection of the laws because a fellow inmate was afforded the application of his RRECs to his parole eligibility date. In that case, *Green v. Semple*, No. 19 Civ. 410 (CSH), 2019 WL 2016779 (D. Conn. May 7, 2019), *reconsideration denied*, 2019 WL 2358023 (D. Conn. June 4, 2019), this Court filed an Initial Review Order dismissing the Petitioner's complaint for failing to state a cognizable equal protection claim. With respect to the applicability of the *ex post facto* clause to the Petitioner's claim of unequal treatment (in relation to the comparator inmate), this Court explained that the comparator held "the right to benefit from the 2011 revision [based on the date of his offense] to avoid violating his constitutional right to protection from *ex post facto* laws," whereas—and, as explained in this ruling—the Petitioner did not have such a right. *Id*. at *6.

15

the second step of moving for default judgment, a court has discretion to elect not to enter default judgment. *See Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 116 (2d Cir. 2015). "The Second Circuit has expressed a strong preference for resolving disputes on the merits." *Baranowski v. Parker*, No. 16 Civ. 1816 (VAB), 2018 WL 3626321, at *4 (D. Conn. July 30, 2018) (citing *Green*, 420 F.3d at 104). "A default judgment is the most severe sanction which the court may apply . . . [and] all doubts must be resolved in favor of the party seeking relief from the default judgment." *Green*, 420 F.3d at 104.

The Court had directed the respondents to file a response to the habeas Petition and specifically asked if the *Breton* ruling had any impact on this case. Doc. 4. Respondents failed to file such response. The Court has since learned that the Court's previous order was inadvertently served on the Office of the Chief State's Attorney, rather than the Office of the Attorney General of Connecticut (the latter office represents the respondents in this case), which evidently explains the respondents' silence. *Id.*

Even if a copy of the Court's order was properly delivered to the respondents' representatives, a motion for entry of default is not warranted because the order did not require respondents to file a pleading or otherwise defend against the habeas petition. The Court's intention was merely to probe whether the change in case law would have any effect on the implementation of RREC-related policy. A pleading is a complaint, an answer to a complaint, or some version of the two, *e.g.*, a third-party complaint or an answer to a counterclaim. Fed. R. Civ. P. 7(a). For a petition for habeas corpus, the court must first conduct a preliminary review to determine whether the petitioner is not entitled to relief. *See* Rule 4, Rules Governing § 2254 Cases. If it is not dismissed, only then does the respondent need to file a timely answer, motion, or other response. *See id.* As such, the

respondents' failure to respond to the Court's order was not a failure to file a pleading or otherwise defend because the Federal Rules of Civil Procedure did not require the respondents to answer in such a way at this stage of the proceedings. Accordingly, a motion for entry of default is inapplicable here. In any case, even if the Court could grant entry of default, it would have been compelled to set it aside on a motion for default judgment for the reasons outlined *supra* in Section III.A through III.C. As such, Petitioner's motion for entry of default is DENIED.[4]

### IV. CONCLUSION

Because Petitioner failed to exhaust his state court remedies regarding the constitutional claim raised in his present Petition, the Court DENIES the requested habeas relief.[5] 28 U.S.C. § 2254(b)(1)(A). His petition to the Connecticut Supreme Court for certification to review the Connecticut Appellate Court's decision, and his supporting brief to that court, failed to provide fair notice that he sought determination on a constitutional *ex post facto* claim.

Moreover, and alternatively, even had Petitioner exhausted his constitutional claim in state court, the Court has no authority to examine his breach of contract claims and has determined that his *ex post facto* claim is unmeritorious.

---

[4] The Court would have filed a supplemental order to show cause, requesting that the Clerk serve the Petition and order on the respondents' proper representatives—*i.e.*, the Office of Attorney General (rather than the Office of the Chief State's Attorney)—as discussed in *supra* Section III.D. In light of this ruling, however, the Court finds it unnecessary to do so.

[5] Any challenge to the state courts' interpretation of the state's accessorial liability statute or reliance on a doctrine of interpretation established by prior state court decisions is not cognizable in this Court. *See Dhaity v. Warden*, 5 F. Supp. 3d 215, 234 (D. Conn. 2014) ("A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved.") (quoting *Carrizales v. Wainwright*, 699 F.2d 1053, 1055 (11th Cir. 1983) (*per curiam*)). State courts are the "ultimate expositors of state law" so that federal courts are generally "bound by their construction." *Id.* (quoting *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975)).

Accordingly, the Court DENIES the petition for federal habeas relief, [Doc. 1], and DISMISSES the case. A certificate of appealability ("COA") will *not* issue in this case. *See* 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000) ("To obtain a COA . . . a habeas prisoner must make a substantial showing of the denial of a constitutional right."). Where a district court has rejected the petitioner's constitutional claim on the merits, a COA is only properly granted where "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484. The Court also DENIES Petitioner's motion for entry of default, [Doc. 5], as it is not appropriate for this stage of a habeas proceeding. The Clerk is directed to close the file.

The foregoing is SO ORDERED.

Dated: New Haven, Connecticut
September 10, 2019

*/s/ Charles S. Haight, Jr.*
CHARLES S. HAIGHT, JR.
Senior United States District Judge